ASSASSINATION ARCHIVES AND
RESEARCH CENTER,
Appellant,

v.

DEPARTMENT OF JUSTICE, Appellee.

No. 93–5310.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 12, 1994.

Decided Jan. 20, 1995.

James H. Lesar, argued the cause and filed the briefs, for appellant.

Peter R. Maier, Attorney, U.S. Dept. of Justice, argued the cause, for appellee. On the brief for appellee were Frank W. Hunger, Asst. Atty. Gen., Eric H. Holder, Jr., U.S. Atty., Leonard Schaitman and Robert M. Loeb, Attys., U.S. Dept. of Justice.

Before: WILLIAMS, HENDERSON and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge STEPHEN F. WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

The Assassination Archives and Research Center appeals an order of the district court granting the Department of Justice's motion for summary judgment on the Center's claims under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (1988), and the President John F. Kennedy Assassination Records Collection Act of 1992, Pub.L. No. 102–526, 106 Stat. 3443 (1992) ("the JFK Act") (set out in 44 U.S.C. § 2107 note (Supp. 1993)). We agree with the district court that the JFK Act does not create an implied private right of action for the release of documents and that the substantive standards for release of documents under the

JFK Act cannot be grafted onto FOIA's procedures. We affirm.

\* \* \*

On January 29, 1992 the Center submitted FOIA requests to the Federal Bureau of Investigation's headquarters and New York field office for "materials relating to Marita Lorenz which pertain in any way to the assassination of President Kennedy, including any index cards." The FBI searched its records and found two documents containing a total of four paragraphs responsive to the request. It released one of these paragraphs, but withheld the other three as exempt from release under FOIA exceptions (b)(7)(C) (the privacy exemption) and (b)(7)(D) (the confidential source exemption). 5 U.S.C. § 552(b)(7)(C), (b)(7)(D) (Supp. 1993).

The Center filed the present suit, challenging the adequacy of the FBI search and the applicability of the FOIA exemptions. After the suit had been filed, Congress passed the JFK Act; the Center then argued that the materials should be released under the JFK Act as well. The district court rejected all of these arguments and entered summary judgment in favor of the Department of Justice. Since the district court order, the Department has, pursuant to the JFK Act, released all but one and one half lines of the previously withheld materials.

In the present appeal, the Center advances two theories under which document requesters in its position could secure immediate judicial application of the substantive standards of the JFK Act without having to wait for that Act's procedures to run their course. First, the Center maintains that the JFK Act itself creates a private right of action for access to Kennedy assassination records. Second, it contends that the substantive standards of the JFK Act should be enforceable under FOIA, so that anyone could sue immediately under FOIA for records whose disclosure is required by the JFK Act but *not* by FOIA.

A review of the JFK Act refutes both theories. The Act requires all government agencies to compile all of their records relating to the assassination of President Kennedy. § 5(c)(1), (c)(2)(A). It defines "assassi-

nation record", § 3(2), and establishes for such records "a presumption of immediate disclosure." § 2(a)(2). The Act provides for the postponement of disclosure given "clear and convincing evidence" of certain enumerated circumstances, § 6, but declares that "only in the rarest cases is there any legitimate need for continued protection of such records." § 2(a)(7). Furthermore, it directs that "all records should be eventually disclosed to enable the public to become fully informed about the history surrounding the assassination". § 2(a)(2).

To implement the Act, Congress has established the sort of structure that the Supreme Court has called, in another context, a "comprehensive legislative scheme including an integrated system of procedures for enforcement." See *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134, 147, 105 S.Ct. 3085, 3092, 87 L.Ed.2d 96 (1985) (citations omitted). The process begins with the agency's search of its own records. When an agency finds records relating to the assassination of President Kennedy for which it determines that no postponement of disclosure is necessary, it must transmit them to the Archivist of the United States, § 5(e)(1), who includes them in the "President John F. Kennedy Assassination Records Collection." § 4(a). Within 30 days of transmission to the Archivist, all records are to be "available to the public for inspection and copying at the National Archives". § 4(b).

Thus, an agency may prevent disclosure of a record only by finding either that the record does not concern the Kennedy assassination or that the record meets the standards for postponement. The Act establishes the Assassination Records Review Board ("the Board") to review these two types of decisions and gives it broad fact-finding and remedial powers. § 7. In its review, the Board must direct the agency to transmit records to the Archivist unless there is "clear and convincing evidence" that the record is not an assassination record or that it qualifies for postponement. § 9(c)(1). For records of executive branch agencies, the President may review the decisions of the Board. § 9(d).

Section 11 of the Act, "Rules of Construction," specifies how the Act is to be integrated into pre-existing law. Of particular relevance in this context are § 11(b), which provides that the Act does not limit or eliminate any rights under FOIA, and § 11(c), saying that "[n]othing in this Act shall be construed to preclude judicial review, under chapter 7 of title 5, United States Code [the Administrative Procedure Act] of final actions taken or required to be taken under this Act."

At bottom, the Center seeks to secure the advantage of the JFK Act's substantive release criteria without the drawbacks—from its perspective—of the Act's procedures. Both of its theories in support of that result run head on into Congress's intent that the standards of the Act should be applied through the Act's own process, a process that includes review by the federal courts (where available at all) only for "final actions taken or required to be taken under [the JFK] Act", the review explicitly preserved by § 11(c).[1]

■ The Center's first theory is that we should read the JFK Act as creating an implied private right of action. On this issue of statutory construction, the "ultimate issue is whether Congress intended to create a private right of action". *California v. Sierra Club,* 451 U.S. 287, 293, 101 S.Ct. 1775, 1778, 68 L.Ed.2d 101 (1981) (citations omitted). Where, as here, the statute expressly provides a remedy, it is "an 'elemental canon' of statutory construction that . . . courts must be especially reluctant to provide additional remedies." *Karahalios v. National Federation of Federal Employees, Local 1263,* 489 U.S. 527, 533, 109 S.Ct. 1282, 1286, 103 L.Ed.2d 539 (1989) (citations omitted).

Here Congress set up a Board to review agency decisions about JFK assassination records, provided for presidential review of Board decisions in a specified set of cases, and preserved a role for courts in the form of review under the APA of "final actions" under the Act. The obvious effect of a private right of action would be to undercut the roles of both the Board and the President, who would find the authority vested in them by Congress transferred wholesale to the courts—at the whim of private requesters. We thus agree with the First Circuit's conclusion that direct enforcement of the Act in the district courts would "disrupt the orderly workings of the statutory scheme". *Sullivan v. Central Intelligence Agency,* 992 F.2d 1249, 1256 (1st Cir.1993).

■ For similar reasons we find the Center's second argument, that the district court should have applied the substantive standards of the JFK Act in the Center's FOIA suit, equally meritless. The JFK Act and the FOIA are separate statutory schemes with separate sets of standards and separate (and markedly different) enforcement mechanisms. There is no evidence that Congress intended that the JFK Act standards be applied to FOIA review of documents involving the Kennedy assassination. The drafters of the JFK Act explicitly addressed the Act's relationship to FOIA, using terms that seem to leave FOIA's completely separate character unaffected: "Nothing in this Act shall be construed to eliminate or limit any right to file requests with any executive agency or seek judicial review of the decisions pursuant to section 552 of title 5, United States Code [the Freedom of Information Act]." JFK Act, § 11(b).

It is true that the JFK Act arose in part out of Congress's express concern that "the Freedom of Information Act, as implemented by the executive branch, has prevented the timely public disclosure of records relating to the assassination of President John F. Kennedy." § 2(a)(5). Accordingly the Act directs agencies to give priority to identifying, reviewing, and transmitting documents that are the subject of FOIA litigation. § 5(c)(2)(G). Congress evidently hoped that prompt administrative application of the Act's broader criteria for release would moot considerable FOIA litigation and would benefit those FOIA requesters who had long sought access to assassination records. See

---

1. Because the President is not an "agency" within the meaning of the APA, see *Franklin v. Massachusetts,* —— U.S. ——, ——–——, 112 S.Ct. 2767, 2775–76, 120 L.Ed.2d 636 (1992); *Arm-*

*strong v. Bush,* 924 F.2d 282, 289 (D.C.Cir.1991), judicial review may never be available under the JFK Act for documents whose release is subject to presidential review.

S.Rep. No. 102–328, 102nd Cong., 2d Sess. 29, *reprinted in* 1992 U.S.C.C.A.N. 2965, 2978. That is exactly what happened in this case: under FOIA, the FBI found four paragraphs and released only one; on applying the JFK Act's standards, the Bureau has now released all but one and one-half lines. Even that material could conceivably be released as the administrative review progresses. The Center's suggestion that "timely public disclosure" can be achieved only by entitling FOIA litigants to employ JFK Act standards assumes that judicial intervention is necessary to prevent agencies (and the Board and the President) from disregarding the Act. The assumption is inconsistent with Congress's choice of procedures for JFK Act releases.

We thus find no statutory warrant for creating a private right of action to enforce the JFK Act, either directly by implying such a cause of action, or through the subterfuge of judicially hybridizing the two acts.

\* \* \*

The Center finally argues that we should remand the case to the district court for further consideration in light of the Supreme Court's decision in *United States Department of Justice v. Landano,* —— U.S. ——, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993), which adopted a narrower view of FOIA's confidential source exemption, § 552(b)(7)(D), than this court had previously applied. But as the district court held that the FBI's non-disclosures were proper not only under (b)(7)(D) but also under the privacy exemption, § 552(b)(7)(C), and the Center has not contested the (b)(7)(C) ruling, its attack on the court's reading of (b)(7)(D) is effectively moot. A remand would be pointless.

The judgment of the district court is

*Affirmed.*