**Michael SCOTT, Plaintiff,**

v.

**UNITED STATES CENTRAL INTELLIGENCE AGENCY and United States Department of Justice, Defendants.**

**Civil Action No. 95–00686 (CRR).**

United States District Court, District of Columbia.

March 1, 1996.

---

Mark S. Zaid, Washington, DC, for plaintiff.

Michelle L. Washington and Elizabeth A. Pugh, Civil Division, Department of Justice; Eric H. Holder, Jr., United States Attorney; Frank W. Hunger, Assistant Attorney General; Bryan Cunningham, Attorney, Central Intelligence Agency; Karlton D. Bolthouse, Attorney, Federal Bureau of Investigation, for defendants.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

### INTRODUCTION

Before the Court are the defendants' Motion to Dismiss as well as the parties' Cross–Motions for Summary Judgment in the above-captioned case. This case arises out of the plaintiff's Freedom of Information Act ("FOIA") request seeking CIA and FBI records relating to the plaintiff's deceased father and mother, manuscripts drafted by the plaintiff's father, and a corporation allegedly affiliated with the plaintiff's father. The CIA and FBI (collectively the "government") released certain responsive documents to the plaintiff and withheld other documents, in part and in whole, pursuant to certain exemptions to the FOIA.

The government has moved to dismiss certain claims on the grounds that the plaintiff has no private cause of action under the Kennedy Assassination Records Collection Act of 1992, 44 U.S.C. § 2107 ("ARCA"), that the plaintiff has failed to exhaust his administrative remedies with respect to claims raised in counts four, six, and seven of the plaintiff's Complaint, and that the government has no records responsive to the claims raised in counts three, four, six, and seven. The government moves for summary judgment on the grounds that the CIA and FBI properly withheld records concerning the plaintiff's father and redacted and withheld portions of the Scott manuscript pursuant to exemptions to the FOIA. The plaintiff does not dispute the government's Motion to Dismiss the claims raised under the ARCA and counts three, four, six, and seven. However, with respect to the remaining counts, the plaintiff argues that the *Vaughn* index produced by the government is insufficient, that the government's search for records responsive to the plaintiff's FOIA request was inadequate, that the government has refused to release information already in the public domain, and that the plaintiff is entitled to summary judgment that the FOIA exemptions relied upon by the government are inapplicable or, in the alternative, that the plaintiff is entitled to conduct discovery of former and current CIA and FBI employees.

Pursuant to the Court's Order, filed February 27, 1996, counsel for the parties appeared before the Court in the above-captioned case on February 29, 1996 to address the adequacy of the CIA's search for records responsive to the plaintiff's FOIA request. After extensive colloquy among the parties and the Court, and upon consideration of the filings by the parties, the entire record herein, and the law applicable thereto, and for the reasons set forth below, the Court shall grant

the government's Motion to Dismiss the claims raised under the ARCA and counts three, four, six, and seven of the Plaintiff's Complaint. The Court shall deny the parties' Cross–Motions for Summary Judgment, without prejudice to renewing such motions at a later date, as the Court cannot address the merits of the cross-motions at this time without a more specific document index. Accordingly, the Court shall order the government to produce a more specific *Vaughn* index. Furthermore, the Court shall direct the defendants to clarify certain questions raised by the plaintiff regarding the government's compliance with the FOIA request and to search any additional files likely to turn up the information requested. The Court shall also order the plaintiff to produce a list of information already in the public domain, and the government shall respond accordingly. Finally, the Court shall deny the plaintiff's request for discovery at this time.

## BACKGROUND

Plaintiff Michael Scott filed a FOIA request in 1986 for a manuscript authored by his father, Winston Scott, and confiscated by CIA official James Angleton upon Winston Scott's death. Undisp. Facts ¶ A2; Plaint's Mat. Facts ¶ 1. The plaintiff's father was a former official of the CIA and apparently served as the Chief of Station in Mexico City from 1956–69 where he worked with David Atlee Phillips, among others, and monitored Lee Harvey Oswald's visit to Mexico City.[1] In response to the plaintiff's 1986 FOIA request, the CIA released portions of a manuscript entitled *It Came To Little* to the plaintiff and withheld portions pursuant to 5 U.S.C. § 552(b)(1), (3). The CIA informed the plaintiff that the agency was aware of only one copy of the manuscript. The plain-

tiff did not appeal the CIA's decision to redact the manuscript at that time.

In 1993, the plaintiff sought re-review of the manuscript for potential additional releases. The plaintiff also asked the CIA to comment on the existence of another manuscript allegedly written by Winston Scott and entitled *The Foul Foe*. As a result, the CIA sent to the plaintiff an additional chapter of the manuscript *It Came to Little* that the CIA had recently released to the public pursuant to the ARCA. Undisp. Facts ¶ A2. The CIA also informed the plaintiff that the manuscript for *It Came to Little* was identical to another manuscript withheld by the agency, *The Foul Foe*. By letter dated February 23, 1994, the plaintiff appealed CIA's determination not to release any additional portions of the manuscript.

In July 1991, the plaintiff submitted a FOIA request for "any and all information the [CIA] may have in reference" to his father, Winston Scott. Undisp. Facts ¶ A1; Complaint ¶ 7. By letter dated May 11, 1993, the plaintiff requested the return of any personal effects of Winston Scott that were confiscated by the CIA. Undisp. Facts ¶ A1. Upon the CIA's failure to respond to the plaintiff's FOIA request, the plaintiff submitted a formal appeal on February 23, 1994. *Id.* In September 1995, after the plaintiff filed the present litigation, the CIA released to the plaintiff seven documents in full, thirty-eight redacted documents, a redacted copy of the manuscript *It Came to Little*, and documents previously released to the public under the ARCA.

In July 1991, the plaintiff also submitted a FOIA request to the FBI seeking information concerning the plaintiff's father. Undisp. Facts ¶ B1; Complaint ¶ 66. On August 24, 1993, the FBI notified the plaintiff that it would release 259 pages in part or full to the plaintiff and that it would withhold

---

1. Although the parties describe Winston Scott's former job title only as "CIA official" in the Undisputed Statement of Facts and Plaintiff's Statement of Material Facts, the plaintiff's brief describes Winston Scott's specific role as the Mexico City Station Chief and his connection to Lee Harvey Oswald. Background "facts" not contained in the Undisputed Statement of Facts

or in the Plaintiff's Statement of Material Facts, which concern Winston Scott's actual position within the CIA and his contact with other agents or individuals, are immaterial to any ruling on the instant motions and are provided only to explain the connection between the records sought by the plaintiff and those records that

twenty-six pages in their entirety.[2] On September 30, 1993, the plaintiff appealed the FBI's decision to withhold certain documents and portions of documents. In response, the FBI released an additional seven pages to the plaintiff. *Id.*

The plaintiff filed suit on April 10, 1995, pursuant to the FOIA and the ARCA, seeking "the disclosure and release of agency records improperly withheld from the plaintiff by the government." In counts one, two, and five, the plaintiff requested that the CIA release his father's manuscript and that the CIA and FBI release all records concerning his father. In counts three, four, six, and seven, the plaintiff sought information from the government regarding his mother and Diversified Corporate Services, a company allegedly operated in Mexico City by the plaintiff's father.

The government filed a Motion to Dismiss or, in the alternative, a Motion for Summary Judgment, containing two separate sworn declarations of Lee Strickland, Information and Privacy Coordinator for the CIA, relating to the CIA's classification decisions regarding the plaintiff's FOIA request for Winston Scott's manuscript and for records regarding Winston Scott. The government's Motion also contained the sworn declaration of Robert Moran, Special Agent of the FBI, and Richard Davidson, Supervisory Special Agent of the FBI, regarding the FBI's withholding decisions with respect to the plaintiff's FOIA requests directed to the FBI.

The plaintiff filed his Cross–Motion for Summary Judgment on October 30, 1995. The government filed its Reply Memorandum and Opposition on December 12, 1995, and attached a supplemental declaration of Lee Strickland containing a description of the search undertaken by the CIA to comply with the plaintiff's FOIA request. The government filed a Praecipe to Add Supplemental Declaration of Robert Moran and Richard Davidson on December 15, 1995, which addressed the FBI's classification decisions regarding additional documents not covered by the FBI's original declarations. The plaintiff

filed its Reply Memorandum on January 16, 1996.

On February 27, 1996, the Court ordered the parties to appear before the Court to address the adequacy of the CIA's search for documents. The plaintiff's counsel provided the Court with a list of files that he alleges were not searched, and the Court informed the parties that it would require the filing of additional pleadings on this matter. The Court also informed the government that its *Vaughn* filings were inadequate.

## DISCUSSION

### I. THE COURT SHALL DISMISS COUNTS THREE, FOUR, SIX, AND SEVEN, AS WELL AS ALL CLAIMS BASED ON THE ARCA, BECAUSE THE COURT LACKS JURISDICTION TO HEAR SUCH CLAIMS.

█ The plaintiff concedes that he failed to exhaust the administrative remedies available to him regarding his FOIA request for information concerning the plaintiff's mother and a corporation allegedly established by his father, as set forth in counts four, six, and seven of the plaintiff's complaint. Because the plaintiff must exhaust his administrative remedies prior to initiating suit in this Court, the Court lacks jurisdiction to consider those claims. *See Oglesby v. Department of the Army,* 920 F.2d 57, 61 (D.C.Cir.1990); *Dettmann v. Department of Justice,* 802 F.2d 1472, 1476 (D.C.Cir.1986).

█ Furthermore, the government asserts that it has no records responsive to the claims raised in counts three, four, six, and seven of the plaintiff's Complaint. The plaintiff does not challenge this assertion. Accordingly, the Court lacks jurisdiction to review such claims. *See Kissinger v. Reporters Committee for Freedom of the Press,* 445 U.S. 136, 139, 100 S.Ct. 960, 963, 63 L.Ed.2d 267 (1980) (Federal court lacks authority to order production of records under the FOIA when agency has not withheld responsive records).

---

may have been reviewed regarding the assassination of President John F. Kennedy.

**2.** The actual number of pages reviewed was 288, and 262 pages were released. Moran Dec. ¶ 22.

■ Finally, the Court lacks jurisdiction to consider the plaintiff's claims which rely upon the ARCA, because there is no private right of action provided by that statute. *See Assassination Archives and Research Center v. Department of Justice*, 43 F.3d 1542 (D.C.Cir.1995); *Sullivan v. CIA*, 992 F.2d 1249 (1st Cir.1993).

## II. THE COURT IS UNABLE TO REVIEW THE GOVERNMENT'S CLASSIFICATION DECISIONS AT THIS TIME BECAUSE THE GOVERNMENT FAILED TO PROVIDE THE COURT WITH AN ADEQUATE *VAUGHN* FILING.

### A. THE GOVERNMENT BEARS THE BURDEN OF JUSTIFYING ITS CLASSIFICATION DECISIONS BY SUBMITTING A DETAILED *VAUGHN* FILING.

It is well-established that "[t]he mandate of the FOIA calls for broad disclosure of Government records." *CIA v. Sims*, 471 U.S. 159, 166, 105 S.Ct. 1881, 1886, 85 L.Ed.2d 173 (1985). However, Congress also recognized "that public disclosure is not always in the public interest" and provided nine exemptions to the FOIA. *Id.*

■ The government bases its withholding of records responsive to the plaintiff's FOIA request on numerous exemptions to the FOIA, which permit the withholding of information when the release of such records may threaten national security, thwart law enforcement efforts, or significantly invade personal privacy rights, among other things.[3] The Court "must make a *de novo* review of the [government's] classification decision," *Hayden v. National Security Agency*, 608 F.2d 1381 (D.C.Cir.1979), *cert. denied*, 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980), and "the [g]overnment bears the burden of establishing that the exemption applies." *Department of Justice v. Landano*, 508 U.S. 165, ——, 113 S.Ct. 2014, 2019, 124 L.Ed.2d 84 (1993). Accordingly, the government must file affidavits and an index, often referred to as a "*Vaughn* filing" or "*Vaughn* index," to enable the trial and appellate courts to perform this *de novo* review of the government's classification decision. *Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C.Cir. 1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

■ The *Vaughn* filing must be sufficiently detailed so that the Court may "make a rational decision whether the withheld material must be produced without actually viewing the documents themselves...." *Dellums v. Powell*, 642 F.2d 1351, 1360 (1980). In *King v. Department of Justice*, 830 F.2d 210 (D.C.Cir.1987), the Court of Appeals for this Circuit set forth clear guidelines for the government's *Vaughn* filing, stating that the government affidavits must:

(1) identify the document, by type and location in the body of documents requested; (2) note [the exemption] claimed; (3) describe the document withheld or any redacted portion thereof, disclosing as much information as possible without thwarting the exemption's purpose; (4) explain how this material falls within one or more of the categories of classified information authorized by the governing executive order; and (5) explain how disclosure of the material in question would cause the requisite degree of harm to the national security.

*King*, 830 F.2d at 224. While it is true that the Court must afford "substantial weight to *detailed* agency explanations in the national security context," such affidavits must be specific in the first place and "cannot support summary judgment if they are 'conclusory, merely reciting statutory standards, or if they are too vague or sweeping.'" *King*, 830 F.2d at 217, 219 (quoting *Allen v. CIA*, 636 F.2d 1287, 1291 (D.C.Cir.1980) (emphasis added)).

### B. THE CIA'S *VAUGHN* FILING IS INADEQUATE.

■ As the Court informed the parties at the February 29, 1996 hearing, the declarations provided by the CIA fail to meet the

---

**3.** The CIA relies upon exemptions (b)(1), (3), (5), and (6) to the FOIA, while the FBI relies upon (b)(1), (2), (6), (7)(C), and (7)(D). *See* 5 U.S.C. § 552(b). Because the Court is unable to make a finding at this time with respect to the merits of the exemptions relied upon by the government, the Court will not describe each of these exemptions in detail.

standard set forth by this Circuit in *King*, and the Court is unable to review the CIA's classification decisions based on these declarations. With respect to the documents released in full and in part by the CIA, the Strickland declarations list the general type of document (e.g., whether a letter, note, or memorandum), the date of the document, and the statutory FOIA exemption relied upon. The declarations also set forth the potential harm to national security that might occur if distinct categories of information were made public. However, the affidavits fail to provide any description of the nature or type of the material redacted,[4] much less justify the redaction by explaining how the nature or type of information withheld meets the requirements of the exemption.[5] The CIA's entries with respect to the redaction of the manuscript suffer from the same deficiencies. As for those documents withheld in their entirety, the CIA declaration merely states that such material is withheld on the basis of "exemptions (b)(1), (b)(3), (b)(5), and/or (b)(6)." Such a statement is entirely inadequate as it fails to provide the date of the documents, the number of documents withheld, and, most importantly, the nature and type of material contained in the documents.[6]

The government suggested in its brief and at the hearing that it would be more than willing to produce a classified declaration and index to enable the Court to review the CIA's classification decisions and that the material withheld in its entirety "can only be described more fully in a classified declaration." First Strickland Dec. ¶ 34. However, the defendant bears the burden of "creat[ing] as full a public record as possible, concerning

the *nature* of the documents and the *justification* for nondisclosure." *Hayden*, 608 F.2d at 1384 (emphasis added). A complete public record enhances the adversary process by allowing the plaintiff the opportunity to comment as to why such information should be released. Such comments further focus the scope of inquiry for the Court's decision and for any appellate review. *Vaughn*, 484 F.2d at 824–25.

Absent further explanation from Mr. Strickland, the Court is reluctant to find that the Strickland Declaration creates as full a public record as possible. The CIA has failed to explain how the identification of the date of the document and the nature of the material withheld (e.g., "list containing names of individuals who provide information to the CIA," or "memo describing covert operation") would itself be classified. Certainly rare and limited circumstances are conceivable when, for example, public confirmation that an unnamed source reported to the CIA on a specific date may actually provide foreign intelligence agencies with classified information, *see, e.g., Phillippi v. CIA*, 655 F.2d 1325 (D.C.Cir.1981) (court upheld CIA's refusal to confirm or deny the existence of documents sought through the FOIA concerning the activities of the Hughes Glomar Explorer vessel, because admitting that the CIA had records would itself reveal classified information), but the Court will not engage in such speculation. While, "there are occasions when extensive public justification would threaten to reveal the very information for which a FOIA exemption is claimed," *Lykins v. Department of Justice*,

---

4. For example, although the defendant sets forth the harm that would result if a certain category of information were released, *see, e.g.,* First Strickland Dec. ¶¶ 7–11 regarding intelligence sources, the declaration fails to identify with specificity the nature or type of information withheld so that the Court may determine whether the redacted material falls within the category described and/or statutory exemption invoked. The defendant might accomplish this with respect to the redacted name of a CIA source by providing an entry stating that the redacted material contains "the name of an individual who provides information to the CIA."

5. An explanation may be unnecessary when the rationale for withholding is obvious from the

description of the nature or type of information redacted. For example, if the description of the information withheld were "the name of an individual who is a CIA source," then the material would clearly fall within exemptions (b)(1) and (2).

6. Although the plaintiff alleges otherwise, the First Strickland Declaration does state that the CIA reviewed the documents and "determined that no further segments of information reasonably can be segregated for release to Plaintiff, either in the documents partially released or those withheld in their entirety." First Strickland Dec. ¶ 32.

725 F.2d 1455, 1463 (1984), the Court presently is not convinced that such circumstances exist in the present case. The Court will only review a classified declaration *in camera* as a last resort. *See Hayden,* 608 F.2d at 1384.

The CIA has also withheld documents found within its files which were "not originated by the CIA." First Strickland Dec. ¶ 35. Although the material "has been referred to the originating agency for review and direct response" to the plaintiff, the CIA refuses to provide the number of documents or the name of the agency to the plaintiff. *Id.* Absent a determination that this information (the number or documents and the name of the agency) somehow constitutes classified information or is otherwise exempt under the FOIA, the CIA should include this information in its revised *Vaughn* filing.

Finally, the CIA continues to withhold an additional manuscript written by Winston Scott entitled *The Foul Foe.* While it is unnecessary for the CIA to produce to the plaintiff identical copies of a document previously released to the plaintiff, to the extent that the document is different in any way, the CIA shall release the document (in redacted form, if necessary) to the plaintiff. The CIA has informed the plaintiff that *The Foul Foe* and the manuscript previously released, in part, to the plaintiff, *It Came to Little,* are identical. However, the CIA has not declared that one manuscript is merely a verbatim copy of the other. Given the differing titles, the manuscripts cannot be word-for-word copies of each other.

### C. THE FBI'S *VAUGHN* FILING IS INADEQUATE.

■ Unlike the Strickland declarations, the First Moran and Davidson declarations go much further toward meeting the specificity required by *Vaughn* and *King.* The FBI produced redacted documents to the plaintiff with codes or symbols in the margins next to the redaction. In the First Moran Declaration, the FBI listed a key to determine the exemption relied upon and the nature of the information redacted based on the codes placed in the margins of the redacted material. Although it does not use the codes from the Moran Declaration, the First Davidson Declaration sufficiently explains the nature of the material redacted from a certain document. The plaintiff has no quarrel with the specificity of these first declarations, and neither does the Court. However, the Court shall require the FBI to comply with *King* by providing an actual comprehensive index of the documents withheld along with the justification for withholding the information, rather than requiring the Court to review each document and look up the corresponding code from the First Moran Declaration.[7] The defendant FBI shall also incorporate into this index the documents referred to in the Second Moran and Davidson Declarations.

### III. THE GOVERNMENT SHALL SEARCH ALL RECORDS REASONABLY CALCULATED TO UNCOVER ALL RELEVANT DOCUMENTS.

■ The Court of Appeals for this Circuit held recently that the government "must demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents' " in order to prevail on a motion for summary judgment. *The Nation Magazine v. Customs Serv.,* 71 F.3d 885, 890 (D.C.Cir.1995) (citation omitted). "The issue is *not* whether any further documents might conceivably exist, but rather whether the government's search for responsive documents was adequate." *Truitt v. Department of State,* 897 F.2d 540, 542 (D.C.Cir.1990) (quotations omitted).

The Supplemental Strickland Declaration sets forth those files searched by the CIA for records responsive to the plaintiff's FOIA requests. However, the plaintiff claims that the CIA failed to search the following agency files: agency file numbers 011150, 014983, 013236; agency files within its Mexico City station; the JFK document database; files maintained within the Historical Review Group; and Winston Scott's "201" file. The

---

7. The FBI failed to provide the Court with a copy of each redacted document. Therefore, even if the Court wished to undertake the burdensome task of reviewing each document, it could not do so.

government shall respond to these allegations specifically, identifying whether such files are in CIA possession and, if so, whether such files have been searched by the CIA. If such files have not been searched, the CIA shall provide an explanation for its failure to review such files. Although the plaintiff also lists specific documents not located by the CIA, the only issue before this Court is whether the search was adequate, not whether other documents may exist. *See Truitt,* 897 F.2d at 542.

## IV. PLAINTIFF SHALL PROVIDE THE GOVERNMENT WITH A SPECIFIC LIST OF INFORMATION ALLEGEDLY IN THE PUBLIC DOMAIN, AND THE GOVERNMENT SHALL RELEASE ANY INFORMATION ALREADY IN THE PUBLIC DOMAIN OR, IN THE ALTERNATIVE, SHALL PROVIDE A SPECIFIC EXPLANATION FOR THE CONTINUED WITHHOLDING OF SUCH INFORMATION.

The plaintiff claims that much of the information withheld from the plaintiff by the government may be in the public domain in light of the government's recent release of material pursuant to the ARCA. The Court recognizes that the withholding of information already in the public domain may "frustrate the pressing policies of the [FOIA] without even arguably advancing countervailing considerations," *Founding Church of Scientology v. NSA,* 610 F.2d 824, 831–32 (D.C.Cir.1979), it is equally true that "there are numerous reasons why an agency might determine that disclosure of information already in the public realm 'reasonably could be expected to cause damage to national security.'" *Washington Post v. Department of Defense,* 766 F.Supp. 1, 10 (D.D.C.1991). Furthermore, the plaintiff " 'must bear the initial burden of pointing to specific informa-

tion in the public domain that appears to duplicate that being withheld.'" *Davis v. Department of Justice,* 968 F.2d 1276, 1279 (D.C.Cir.1992) (quoting *Afshar v. Department of State,* 702 F.2d 1125, 1130 (D.C.Cir. 1983)). Although this may be difficult for the plaintiff, in light of the plaintiff's lack of knowledge as to what information is being withheld, to hold otherwise would require the government to prove a negative and "might require the government to undertake an exhaustive, potentially limitless search" for information in the public domain. *Davis,* 968 F.2d at 1279.

Accordingly, the Court shall order the plaintiff to compile a list of information in the public domain, with specific documentation demonstrating the legitimacy of such claims. The government shall review the list provided by the plaintiff and determine whether any of the information withheld is already in the public domain. If any of the information withheld is in the public domain, the government shall release such information or provide "a specific explanation for continued withholding of that information, supported by appropriate agency declarations, of why formal release of information already in the public domain threatens the national security." *Washington Post,* 766 F.Supp. at 10.[8]

## CONCLUSION

For the reasons discussed above, the Court shall grant the government's Motion to Dismiss with respect to plaintiff's claims based on the ARCA and counts three, four, six, and seven of the plaintiff's Complaint. The Court shall deny the parties' Cross–Motions for Summary Judgment without prejudice to the renewal of such cross-motions for summary judgment after the defendants provide an adequate *Vaughn* filing and search for documents. The Court shall also deny any discovery pending the supplemental *Vaughn*

---

**8.** The government argues that requiring the release of information already in the public domain as a result of the government's compliance with the ARCA would have the effect of requiring the CIA to apply the ARCA disclosure requirements when complying with a FOIA request. Such a requirement would, according to the government, fly in the face of the law because the courts have held that there is no private right of action

under the ARCA and that the FOIA and ARCA are separate statutory schemes. The Court finds this argument unpersuasive. The Court has put the burden on the plaintiff to identify the information in the public domain, and the rationale for releasing information already in the public domain does not depend on how the public became of aware of such knowledge.

filing. The Court shall direct the government to file a more specific *Vaughn* index, to clarify certain questions raised by the plaintiff and addressed in this Memorandum Opinion regarding the manuscript entitled *The Foul Foe* and the files not originated from the CIA, and to search any additional files likely to turn up responsive documents. Furthermore, the Court shall order the plaintiff to provide a specific list of information already in the public domain, and the government shall release any such information or, in the alternative, shall provide a specific explanation for continued withholding of such information.