David D. MINIER, Plaintiff–Appellant,

v.

CENTRAL INTELLIGENCE AGENCY, Defendant–Appellee.

No. 95–15475.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 13, 1996.

Decided July 8, 1996.

David D. Minier,* Chowchilla, California, pro se.

Camil A. Skipper, Assistant United States Attorney, Sacramento, California, for defendant-appellee.

* We take judicial notice that plaintiff-appellant is a Judge of the Madera County Municipal Court, of the State of California.

Before: T.G. NELSON and TASHIMA, Circuit Judges, and BURNS, District Judge.[**]

TASHIMA, Circuit Judge:

Invoking the Freedom of Information Act, 5 U.S.C. § 552 et seq. ("FOIA"), plaintiff-appellant David Minier ("Minier") requested defendant-appellee Central Intelligence Agency (the "CIA") to disclose whether Claude Barnes Capehart ("Capehart"), acting as a CIA agent, was involved in a CIA plot to assassinate President John F. Kennedy. The CIA, relying on certain exemptions to the FOIA, refused to confirm or deny Capehart's alleged employment with the CIA. The district court granted summary judgment for the CIA, and Minier appeals.

We have jurisdiction under 28 U.S.C. § 1291. Because the CIA is exempted from disclosing agent names under the plain language of 50 U.S.C. §§ 403g and 403–3(c)(5), we affirm.

## BACKGROUND

Certain historical facts are unassailable, while others are constantly subject to attack and, ultimately, remain shrouded in mystery and confusion. Both types of facts surround the assassination of President John F. Kennedy. We know beyond dispute, that on November 22, 1963, President Kennedy was tragically shot and killed while traveling through the streets of Dallas, Texas. We also know that a single individual, Lee Harvey Oswald, was arrested and portrayed to the public as the sole assassin. Over the past thirty years, however, many people have debated the accuracy of the sole assassin theory, positing that one individual could not have accomplished the task alone. Although many conspiracy theories have been generated through the years, the most infamous theory alleges CIA involvement in the assassination.[1] In June, 1975, the Rockefeller Commission, established by President Ford, released a report finding "no credible evidence of any CIA involvement." H.R.Rep. No. 625(II), 102d Cong., 2d Sess. 10 (1992) (quoting Report to the President by the Comm'n on CIA Activities within the U.S., June 1975, at 269). As this case reveals, however, concerns about the role the CIA played in the Kennedy assassination have not yet been laid to rest.

Capehart, who died in 1989, claimed to have been a CIA agent involved in the assassination of President Kennedy. In February, 1992, Minier made a FOIA request of the CIA to determine whether the CIA had ever employed Capehart, directly or indirectly. In March, 1992, the CIA denied the request based on its policy never to "confirm nor deny the past or present affiliation of individuals with the CIA."

In April, 1992, Minier administratively appealed this decision within the CIA. The CIA responded that there would be a delay in the consideration of his appeal because of a backlog of 400 earlier filed appeals. In June, 1994, Minier expanded his original request to include all records of the "activities, assignments, actions and whereabouts of Claude Barnes Capehart during the month of November, 1963." In October, 1994, the CIA denied Minier's appeal. Relying on Exemptions 1 and 3 of FOIA, 5 U.S.C. §§ 552(b)(1) and (b)(3), the CIA concluded that to confirm or deny a relationship between the CIA and Capehart would jeopardize national security and compromise CIA sources and methods.

In July, 1994, before the CIA acted on his appeal, Minier filed this action to compel the CIA to release the requested information.[2] In August, 1994, Minier filed a motion for a

---

[**] Honorable James M. Burns, Senior United States District Judge for the District of Oregon, sitting by designation.

1. See Vanessa L. Webster, Note, Truth, Justice and the American Way–Revelation Comes Due for J.F.K.: The John F. Kennedy Assassination Records Collection Act of 1992, 17 Seton Hall Legis. J. 261 (1993) (discussing Warren Commission and Rockefeller Commission investigations of the Kennedy assassination).

2. That Minier filed a district court action before the CIA administratively ruled does not present an exhaustion problem. 5 U.S.C. § 706(1) allows courts to "compel agency action unlawfully withheld or unreasonably delayed." (Emphasis added.)

*Vaughn* index.[3] The magistrate judge denied the motion, concluding that the parties' legal arguments would not be aided by an index of CIA documents pertaining to Capehart.

The CIA thereafter sought summary judgment. The CIA submitted a declaration in support of its motion ("CIA declaration"), which explained that protection of the identities of CIA personnel is necessary for the development, maintenance and protection of secret contacts both in the United States and abroad. The district court granted the CIA's motion for summary judgment and denied Minier's motion for reconsideration of the magistrate's denial of a *Vaughn* index. The district court concluded: (1) the information was properly exempted under both Exemptions 1 and 3; (2) there was no evidence of CIA bad faith; and (3) a *Vaughn* index would not aid Minier's ability to contest the applicability of the exemptions. This appeal followed.

## DISCUSSION

### I. Standard of Review

■ Ordinarily, we review summary judgments *de novo.* In FOIA cases, because of their unique nature, we have adopted a two-step standard of review. *Schiffer v. FBI,* 78 F.3d 1405, 1408 (9th Cir.1996).

■ Unlike the typical summary judgment analysis, in a FOIA case, we do not ask whether there is a genuine issue of material fact, because the facts are rarely in dispute. *Id.* at 1409. We must first determine whether the district court had an adequate factual basis upon which to base its decision. *Painting Indus. of Hawaii Market Recovery Fund v. United States Dep't of the Air Force,* 26 F.3d 1479, 1482 (9th Cir.1994). If so, the district court's conclusion of an exemption's applicability is reviewed *de novo. Schiffer,* 78 F.3d at 1409.

3. *See Vaughn v. Rosen,* 484 F.2d 820, 826–28 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

4. The term arose in a case in which the CIA refused to confirm or deny CIA connection to a ship named the *Hughes Glomar Explorer. See*

## II. Exemption 3 of FOIA

■ FOIA entitles private citizens to access government records. *See CIA v. Sims,* 471 U.S. 159, 166–67, 105 S.Ct. 1881, 1886–87, 85 L.Ed.2d 173 (1985). FOIA contains nine exemptions, however, which a government agency may invoke to protect certain documents from public disclosure. 5 U.S.C. § 552(b). Moreover, a government agency may issue a "Glomar Response," that is, refuse to confirm or deny the existence of certain records, if the FOIA exemption would itself preclude the acknowledgment of such documents. *Hunt v. CIA,* 981 F.2d 1116, 1118 (9th Cir.1992).[4]

■ The agency resisting disclosure of requested information has the burden of proving the applicability of an exemption. *Church of Scientology v. United States Dep't of the Army,* 611 F.2d 738, 742 (9th Cir.1979). The agency may meet its burden by submitting a detailed affidavit showing that the information "logically falls within the claimed exemptions." *Hunt,* 981 F.2d at 1119. In evaluating a claim for exemption, a district court must accord "substantial weight" to CIA affidavits, provided the justifications for nondisclosure "are not controverted by contrary evidence in the record or by evidence of CIA bad faith." *Id.* (citing *Miller v. Casey,* 730 F.2d 773, 776 (D.C.Cir.1984)).

■ In the case at bench, the CIA relies on Exemption 3, 5 U.S.C. § 552(b)(3), to justify its Glomar Response regarding Capehart's alleged employment with the CIA.[5] Exemption 3 covers records that are specifically exempted from disclosure by other federal statutes "provided that such statute affords the agency no discretion on disclosure, establishes particular criteria for withholding the information, or refers to the particular types of material to be withheld." *Hunt,* 981 F.2d at 1118 (citing 5 U.S.C.

*Phillippi v. CIA,* 546 F.2d 1009, 1011 (D.C.Cir. 1976).

5. The CIA also relies on Exemption 1. Because we find that Exemption 3 exempts the information, we do not address the applicability of Exemption 1.

§ 552(b)(3)).[6] A two-part inquiry determines whether Exemption 3 applies to a given case. *Sims,* 471 U.S. at 167, 105 S.Ct. at 1886–87. First, a court must determine whether there is a statute within the scope of Exemption 3. *Id.* Then, it must determine whether the requested information falls within the scope of the statute. *Id.*

The CIA contends that the requested information is exempted under 50 U.S.C. §§ 403–3(c)(5)[7] and 403g.[8] Both statutes clearly identify the types of material to be withheld under their scope as required by 5 U.S.C. § 552(b)(3), and therefore qualify as FOIA exemptions. *See Sims,* 471 U.S. at 167–68, 105 S.Ct. at 1886–87 (identifying predecessor to § 403–3(c)(5), 50 U.S.C. § 403(d)(3) (amended 1992), as an Exemption 3 statute); *Hunt,* 981 F.2d at 1118 (same); *Sims,* 471 U.S. at 193, 105 S.Ct. at 1900 (Marshall, J. concurring) (identifying § 403g as an exemption from FOIA); *Wiener v. FBI,* 943 F.2d 972, 972 (9th Cir.1991) (same), *cert. denied,* 505 U.S. 1212, 112 S.Ct. 3013, 120 L.Ed.2d 886 (1992).

The next question is whether the requested information falls within the scope of these two statutes. Section 403–3(c)(5) provides that the Director of the CIA shall "protect intelligence sources and methods from unauthorized disclosure." Section 403–3(c)(5) is "very broad authority to protect all sources of intelligence information from disclosure." *Hunt,* 981 F.2d at 1119 (quoting *Sims,* 471 U.S. at 168–69, 105 S.Ct. at 1887–88). In fact, *Hunt* has recognized the "sources and methods" statutory mandate as a "near-blanket FOIA exemption," which is "only a short

step [from] exempting all CIA records from FOIA." *Id.* at 1120, 1121 (quotation omitted).

Section 403g provides that in order "to implement 403–3(c)(5) . . . the Agency shall be exempted" from disclosing "the organization, functions, *names,* official titles, salaries, or numbers of personnel employed by the Agency." 50 U.S.C. § 403g (emphasis added). Reading these two statutes together, the CIA may withhold the names of its employees because release of this information would disclose "sources and methods" of intelligence gathering. *See Sims,* 471 U.S. at 193, 105 S.Ct. at 1900 (Marshall, J. concurring) (noting that "Congress has elsewhere identified particular types of information that it believes may be withheld . . ., such as the identities of Agency employees"); *Wiener,* 943 F.2d at 983 ("Codenames plainly fall within section 403g's exemption of the names of CIA agents"). Thus, the plain language of §§ 403–3(c)(5) and 403g expressly provides that the CIA is exempted from disclosing the names of its employees.

▋ Given Congress's express acknowledgment that the CIA may withhold agent names under § 403g, in conjunction with the "near-blanket" FOIA exemption to protect sources and methods under § 403–3(c)(5), there can be no doubt that Exemption 3 authorizes the CIA's refusal to confirm or deny the existence of an employment relationship between itself and Capehart. It follows that because the CIA may decline to acknowledge the existence of Capehart's alleged employment, it may also decline to disclose Capehart's alleged CIA activities during November, 1963. Release of such

---

6. 5 U.S.C. § 552(b)(3) provides in pertinent part:

This section does not apply to matters that are—

. . . .

(3) specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

7. 50 U.S.C. § 403–3(c)(5) provides:

In the Director's capacity as head of the intelligence community, the Director shall—

. . . .

(5) protect intelligence sources and methods from unauthorized disclosure.

8. 50 U.S.C. § 403g provides in pertinent part:

In the interests of the security of the foreign intelligence activities of the United States and in order further to implement 403–3(c)(5) of this title that the Director of Central Intelligence shall be responsible for protecting intelligence sources and methods from unauthorized disclosure, the Agency shall be exempted from . . . the provisions of any other law which require the publication or disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency.

information would not only tacitly reveal whether Capehart had an employment relationship, but would also provide a window into the CIA's "sources and methods." [9]

## III. Minier's Contentions

Tellingly, Minier does not directly dispute the applicability of Exemption 3. *See,* AOB at 18 ("even if the CIA's claim of exemption from disclosure were otherwise valid ...."). Instead, he contends that summary judgment was improperly granted in light of: (1) the President John F. Kennedy Assassination Records Collection Extension Act of 1994 (the "JFK Act"), Pub.L. No. 102–526, 1992 U.S.C.C.A.N. (106 Stat.) 3443–58, as amended, Pub.L. No. 103–345, 1994 U.S.C.C.A.N. (108 Stat.) 3128–30 (set out in 44 U.S.C. § 2107 note); (2) his allegation that the CIA handled his request in bad faith; and (3) the district court's refusal to require a *Vaughn* index.

## A. The JFK Act

■ Congress enacted the JFK Act, in part, because "the Freedom of Information Act, as implemented by the executive branch, has prevented the timely public disclosure of records relating to the assassination of President John F. Kennedy." JFK Act § 2(a)(5). The JFK Act provides that "all Government records concerning the assassination of President John F. Kennedy should carry a presumption of immediate disclosure...." JFK Act § 2(a)(2). Minier suggests that in light of the congressional concerns expressed in the JFK Act, the CIA must disclose the requested information under FOIA.

Two circuits have rejected the notion that the concerns of the JFK Act should be engrafted onto FOIA requests. *Assassination Archives and Research Center v. Department of Justice,* 43 F.3d 1542 (D.C.Cir.1995); *Sullivan v. CIA,* 992 F.2d 1249, 1255–56 (1st Cir.1993). As *Assassination Archives* points out, the JFK Act, by its own terms, is an entirely separate scheme from the FOIA. 43

F.3d at 1544. The JFK Act provides that "[n]othing in this Act shall be construed to eliminate or limit any right to file requests ... or seek judicial review of the decisions pursuant to [FOIA]." JFK Act § 11(b). From this language, the District of Columbia Circuit concluded that the drafters of the JFK Act intended "to leave FOIA's completely separate character unaffected." 43 F.3d at 1544.

We agree. Had Congress intended the JFK Act to alter the procedure for reviewing FOIA requests, presumably it would have expressly said so. *See id.* ("There is no evidence that Congress intended that the JFK Act standards be applied to FOIA review of documents involving the Kennedy assassination."). Moreover, in this particular case, Minier's interpretation of the JFK Act would have the effect of overriding the plain language of § 403g's exemption from disclosure otherwise required "by *any* ... law." 50 U.S.C. § 403g (emphasis added). There is nothing in either the language or the legislative history of the JFK Act to suggest that Congress intended it to nullify other statutory schemes.

It is undoubtedly true that the JFK Act was motivated by less than adequate FOIA responses to Kennedy assassination record requests. *See* JFK Act § 2(a)(5). The JFK Act itself, however, requires agencies to release broader amounts of information relating to the Kennedy assassination. Thus, "Congress evidently hoped that prompt administrative application of the Act's broader criteria for release would moot considerable FOIA litigation and would benefit those FOIA requesters who had long sought access to assassination records." *Assassination Archives,* 43 F.3d at 1544 (citing S.Rep. No. 102–328, 102nd Cong., 2d Sess. 29, *reprinted in* 1992 U.S.C.C.A.N. 2965, 2978). To the extent those requests are still made, however, there is nothing to suggest that Congress intended the JFK Act to override the CIA's ability to claim proper FOIA exemptions. To the contrary, Congress evinced an intent

---

9. Although Capehart is now dead, there is nothing in § 403g to suggest that it should be construed to apply only to presently employed agents. The language of the statute applies to names of individuals "employed" by the CIA. 50 U.S.C. § 403g. Use of the word "employed" without qualification indicates that Congress intended the statute to apply to both current and former agents.

that the JFK Act would not affect the functioning of FOIA. Accordingly, we hold that the JFK Act has no direct bearing on Minier's FOIA request.

**B. Bad Faith**

■ Minier also argues that the CIA exercised bad faith in reviewing his claim. The thrust of his argument is that, against the backdrop of a Congress demanding openness regarding the Kennedy assassination, it took the CIA over two years to deny his request. Minier further maintains that if the CIA did in fact review his claim in bad faith, the district court should set aside the denial of his request as "arbitrary and capricious" under 5 U.S.C. § 706(2)(A).[10] We disagree.

■ Upon a showing of agency bad faith, a court must *not* accord agency affidavits "substantial weight." *Hunt,* 981 F.2d at 1119. Instead, a court must review the FOIA request with heightened scrutiny. *Carter v. United States Dep't of Commerce,* 830 F.2d 388, 393 (D.C.Cir.1987). As the District of Columbia Circuit has noted, however, "the mere allegation of bad faith" should not "undermine the sufficiency of agency submissions." *Id.* Before rejecting the affidavits, "[t]here must be tangible evidence of bad faith." *Id.* In the case before us, the district court rejected Minier's allegations of bad faith, finding that the delay was due to the CIA's "first-in, first-out" review policy, which required the processing of 400 claims before Minier's. The district court's finding is clearly supported by the uncontroverted record.

■ Moreover, even assuming Minier has presented evidence of bad faith, he is still not entitled to the documents under 5 U.S.C. § 706(2)(A). "Requiring an agency to disclose exempt information is not authorized by FOIA." *Spurlock v. FBI,* 69 F.3d 1010, 1016 (9th Cir.1995). A district court only has *jurisdiction* to compel an agency to disclose *improperly withheld* agency records. *Id.* at 1015 (citing *Kissinger v. Reporters Comm. for Freedom of the Press,* 445 U.S. 136, 150,

100 S.Ct. 960, 968, 63 L.Ed.2d 267 (1980)). An agency record is only improperly withheld if it does not fall within an exemption. *Id.* at 1016. Once it has been determined that an agency had the statutory authority to withhold the document, the information is categorically exempt. *Id.* Congress "did not invite a judicial weighing of the benefits and evils of disclosure on a case-by-case basis." *FBI v. Abramson,* 456 U.S. 615, 631, 102 S.Ct. 2054, 2064, 72 L.Ed.2d 376 (1982). Thus, the remedy for a showing of bad faith is to review the agency affidavits with greater scrutiny, not to require disclosure of properly exempted documents.

Here, there is no question that the CIA may refuse to disclose the names of its agents under 50 U.S.C. §§ 403g and 403–3(c)(5). We need simply read the statutes to arrive at this result, without according any deference to the CIA declaration. Accordingly, Minier's allegation of bad faith, even assuming its truth, is insufficient to defeat the CIA's motion for summary judgment.

**C. The *Vaughn* Index**

■ Minier's final argument is that summary judgment was premature because he did not have access to a *Vaughn* index. *See Vaughn v. Rosen,* 484 F.2d at 826–28. A *Vaughn* index must identify each document withheld, and provide a particularized explanation of how disclosure would violate an exemption. *Wiener,* 943 F.2d at 978. *Vaughn* indices are sometimes necessary because ordinary rules of discovery cannot be followed in FOIA cases where the issue is whether one party is entitled to non-disclosed documents. *Id.* at 977. The result is that the party seeking disclosure is left in the unenviable position of relying on the representations of the agency seeking to withhold the requested information. *Id.* Thus, courts often require *Vaughn* indices to restore some semblance of the traditional adversary process. *Id.*

---

**10.** 5 U.S.C. § 706(2)(A) provides that a reviewing court shall—

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. . . .

*Vaughn* indices, however, are not appropriate in all FOIA cases. *Id.* at 978 n. 5. For example, when the affidavit submitted by an agency is sufficient to establish that the requested documents should not be disclosed, a *Vaughn* index is not required. *Lewis v. IRS,* 823 F.2d 375, 380 (9th Cir. 1987). Moreover, when a FOIA requester has sufficient information to present a full legal argument, there is no need for a *Vaughn* index. *Wiener,* 943 F.2d at 978 n. 5 (citing *Brown v. FBI,* 658 F.2d 71 (2d Cir. 1981)).

In this case, the legal question of whether the CIA must disclose the existence of an employment relationship is not aided by a review of employment records or other documents. The parties are equally capable of addressing the legal question by analyzing the applicable statutes. Thus, because the identity or presence of documents would not aid Minier's legal arguments, a *Vaughn* index was not required. Accordingly, the district court did not err in denying reconsideration of the magistrate judge's denial of Minier's motion for a *Vaughn* index.

### CONCLUSION

Although we sympathize with Minier's search for answers surrounding President Kennedy's assassination, we cannot reward his endeavors under FOIA. Only Congress can override the plain language of 50 U.S.C. §§ 403–3(c)(5) and 403g, which authorize the CIA to withhold the identity of its employees.

AFFIRMED.