# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 6, 2018          Decided June 14, 2019

No. 17-5048

ARON DIBACCO AND BARBARA WEBSTER,
APPELLANTS

v.

UNITED STATES DEPARTMENT OF THE ARMY, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:87-cv-03349)

*James H. Lesar* argued the cause and filed the briefs for appellants.

*Brinton Lucas*, Counsel, U.S. Department of Justice, argued the cause for appellees. With him on the brief were *Jessie K. Liu*, U.S. Attorney, and *R. Craig Lawrence* and *Fred E. Haynes*, Assistant U.S. Attorneys.

Before: HENDERSON, GRIFFITH, and WILKINS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: In 1985, Carl Oglesby filed Freedom of Information Act requests seeking documents about the government's relationship with Reinhard Gehlen, a former Nazi general. Believing the relevant agencies had failed to comply with their disclosure obligations under the statute, Oglesby filed this lawsuit. More than thirty years of litigation later, we consider his case for the fourth time. When the court last did so in 2015, we affirmed the district court's grant of summary judgment against Oglesby, but remanded the case so that the district court could consider, in the first instance, issues related to a batch of documents the government released during the appeal. The district court has now done so, concluding that the government adequately searched for documents and justified its redactions. We agree, and affirm.

I

This court has previously recounted the facts of this case in detail. *See DiBacco v. U.S. Army*, 795 F.3d 178, 184-88 (D.C. Cir. 2015); *Oglesby v. U.S. Dep't of Army*, 79 F.3d 1172, 1175-76 (D.C. Cir. 1996); *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 60-61 (D.C. Cir. 1990). In brief, Reinhard Gehlen was a senior Nazi intelligence official in Eastern Europe during World War II. *DiBacco*, 795 F.3d at 184. Following the Nazis' defeat, Gehlen was recruited by the United States to operate a European spy network known as the Gehlen Organization. *Id.* The Gehlen Organization was eventually absorbed by West Germany's intelligence service, which Gehlen led until he retired in 1968. *Id.*

Carl Oglesby was a journalist interested in the relationship between Gehlen and the United States, and in 1985 he submitted requests under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, to six government agencies. *DiBacco*,

795 F.3d at 185. The requests sought numerous records relating to Gehlen's involvement with the U.S. Army and the Office of Strategic Services, a predecessor to the Central Intelligence Agency (CIA). *Id.* Dissatisfied with the government's initial productions, Oglesby filed this FOIA suit in 1987. *Id.* As a result, the government released thousands of documents to Oglesby over the next two decades. *Id.* at 187. His dogged pursuit of records (aided by intervening congressional action) led the CIA to admit for the first time its relationship with Gehlen and his spies. *Id.* at 186.

Oglesby passed away in September 2011. *Id.* at 187. His daughter, Aron DiBacco, and his domestic partner, Barbara Webster (collectively, "DiBacco"), were substituted as plaintiffs at their request. *Id.* Soon afterward, DiBacco and the remaining defendants—the CIA, Department of the Army, and National Security Agency (NSA)—filed cross-motions for summary judgment. *Id.* The district court granted the defendants' motion and denied DiBacco's. *Id.* DiBacco appealed, and we affirmed. *Id.* at 200.

That would have been the end of the matter, except that while the appeal was pending, the Army disclosed a new batch of 2,863 pages of records that were responsive to Oglesby's initial FOIA requests (the "Remand Records"). *Id.* at 190. All but eleven of the nearly three thousand pages were produced in full. *Id.*; *DiBacco v. U.S. Dep't of the Army*, 234 F. Supp. 3d 255, 265 (D.D.C. 2017). We remanded the case to the district court "to allow the parties to create a record and the district court to decide in the first instance the narrow question of whether those withholdings" made under FOIA Exemptions 1 and 3 on the eleven partially redacted pages "were permissible." *DiBacco*, 795 F.3d at 194; *id.* at 200 ("Our remand is limited to issues arising from the Army's release to DiBacco during the appeal of responsive but redacted Army

documents that had been held by the National Archives."). The Army later released one of the eleven pages in full, leaving in controversy only ten pages with limited redactions. *DiBacco*, 234 F. Supp. 3d at 265.

The parties subsequently filed renewed cross-motions for summary judgment. DiBacco argued that the Army had not conducted an adequate search for responsive records and that the redactions to the newly produced records were improper. The district court rejected those contentions, concluding that nothing about the most recent production of documents called into question the adequacy of the Army's search, which we had already approved, and that the minimal redactions were justified. *Id.* at 266-79. DiBacco timely appealed.

The district court had jurisdiction over this FOIA action under 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B). We have jurisdiction under 28 U.S.C. § 1291, and we review de novo the adequacy of the search and the government's withholdings. *See DiBacco*, 795 F.3d at 188, 195-96.

II

Most of DiBacco's arguments on appeal seek to reopen our prior decisions or to dispute aspects of the government's earlier productions that were not at issue on remand. As a result, only two of DiBacco's challenges are properly before us. First, DiBacco argues that the district court erred in concluding that the government's search for responsive documents was adequate. In particular, she suggests that certain of the declarations submitted by the government to justify the scope of its search were deficient, and that the Remand Records contained references that obligated the government to conduct further searches. Second, she argues that the government failed

to justify the redactions it made to ten pages of the Remand Records. The challenges lack merit.

A

We first address the government's search. When we consider the adequacy of a search in response to a FOIA request, the burden is on the agency to demonstrate that it made a "good faith effort to conduct a search . . . using methods which can be reasonably expected to produce the information requested." *Oglesby*, 920 F.2d at 68. Courts may rely on a "reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Valencia–Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (quoting *Oglesby*, 920 F.2d at 68). Summary judgment must be denied "if a review of the record raises substantial doubt" about the search's adequacy, "particularly in view of well defined requests and positive indications of overlooked materials." *Id.* (internal quotation marks omitted).

DiBacco challenges various declarations produced by the government to justify its search. Most of those declarations have previously been approved of and relied upon by this court, and nothing about the Remand Records raises concerns about their accuracy or sufficiency. Similarly, DiBacco attacks aspects of the government's search that we have already concluded were adequate. These challenges are barred by the law-of-the-case doctrine. *Keepseagle v. Perdue*, 856 F.3d 1039, 1048 (D.C. Cir. 2017) ("When there are multiple appeals taken in the course of a single piece of litigation, law-of-the-case doctrine holds that decisions rendered on the first appeal should not be revisited on later trips to the appellate court."

(quoting *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996))).

The critical declaration that describes the only search relevant to this appeal is from Joanne Benear, Chief of the United States Army Intelligence and Security Command's Freedom of Information and Privacy Act Office. J.A. 1851. Benear has held that supervisory position since 1999, but has been involved with this case since Oglesby's "first request for various operational files." *Id.* She attests that her declaration was made on her "personal knowledge and information made available to [her] in [her] official capacity." *Id.* She then describes in detail the provenance of the Remand Records, the government's search, and what documents the government has in its possession. *Id.* at 1852-54.

DiBacco contends that Benear's declaration is deficient in two ways. First, she suggests that it contains only broad, boilerplate language that is insufficiently detailed to support summary judgment. We disagree. There is nothing boilerplate about the declaration; every paragraph specifically relates to DiBacco's suit and describes in detail the steps taken to search for responsive records and why further searches were deemed unnecessary or futile. *See id.* Second, DiBacco argues that Benear's declaration was not based on personal knowledge as required by Federal Rule of Civil Procedure 56. Not so. As an initial matter, much of the information contained within the declaration *is* based on her personal knowledge; Benear has been intimately involved in this FOIA litigation for decades. Moreover, although some of the information was relayed to Benear by her subordinates, declarations in FOIA cases may include such information without running afoul of Rule 56. *See Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1358 (D.C. Cir. 1983) (approving of testimony of a supervisor like Benear because "he consulted with his colleagues who had personal

knowledge" of the relevant aspects of the search); *see also Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 813-14 (2d Cir. 1994) (rejecting a "personal knowledge" challenge to an affidavit from a FOIA component supervisor and holding that "[a]n affidavit from an agency employee responsible for supervising a FOIA search is all that is needed to satisfy Rule [56(c)]; there is no need for the agency to supply affidavits from each individual who participated in the actual search").

That leaves DiBacco's challenges to the government's failure to conduct additional searches. The Remand Records are reproductions of documents archived on microfilm. They contain "Top Secret Replacement Sheets" that indicate that shortly after World War II, certain classified documents were removed before the files were photographed. J.A. 1853-54. DiBacco argues that these sheets include information that points to additional responsive records for which the government must search. There were 135 of the Top Secret Replacement Sheets in the production, J.A. 1853, and at least some contain "[d]ossier numbers, the subjects of the dossiers, and the dates" that DiBacco says could have been the bases for further searches, DiBacco Br. 45.

When defending a search, the government must "show that its search efforts were reasonable and logically organized to uncover relevant documents," but "it need not knock down every search design advanced by every requester." *DiBacco*, 795 F.3d at 191. It is true that when a search turns up "positive indications of overlooked materials," summary judgment may be inappropriate. *Valencia–Lucena*, 180 F.3d at 326 (citation omitted). But "the agency need pursue only a lead it cannot in good faith ignore, *i.e.*, a lead that is both clear and certain." *Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 389 (D.C. Cir. 1996). It is "the rare case indeed in which an agency record contains a lead so apparent." *Id.*

Benear's declaration states that she and her staff could not locate the documents referred to in the Replacement Sheets, or even determine where to start looking for any such documents. J.A. 1854. The district court held that these facts, combined with the seventy years that had passed since the original documents were replaced with these sheets, meant that there was no reason to disturb our previous holding that the government's search was adequate. *DiBacco*, 234 F. Supp. 3d at 266-67. To the contrary: "if the documents replaced by these 'Replacement Sheets' still exist, and if they are in fact responsive to Oglesby's FOIA requests, the Army presumably would have found them in its searches, which it has declared covered all 'locations that might contain responsive records.'" *Id.* at 267 (quoting *DiBacco*, 795 F.3d at 190). This conclusion was sound. The information revealed in the Remand Records was neither a "clear" nor "certain" lead, and thus was not the sort of indication of further responsive material that was "so apparent" as to require additional inquiry. *Kowalczyk*, 73 F.3d at 389.

B

When the government produced the Remand Records to DiBacco, the CIA requested that certain information on ten pages be withheld pursuant to two statutory exemptions contained in the FOIA. As the district court noted, most of these redactions were "very minimal." *DiBacco*, 234 F. Supp. 3d at 269. DiBacco nevertheless argues that they were improper.

"An agency withholding responsive documents from a FOIA release bears the burden of proving the applicability of claimed exemptions," typically through affidavit or declaration. *DiBacco*, 795 F.3d at 195 (quoting *ACLU v. Dep't*

*of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011)). "Summary judgment is warranted based on the agency's affidavit if it 'describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith.'" *Id.* at 196 (quoting *ACLU*, 628 F.3d at 619).

Here, the CIA has explained its redactions by reference to FOIA Exemptions 1 and 3. Because we conclude that the CIA properly justified each of its redactions under Exemption 3, we need not address its use of Exemption 1.

Exemption 3 provides that an agency may withhold information "specifically exempted from disclosure by statute" when the statute in question "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or . . . establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). The two statutes relied upon by the CIA to withhold information under Exemption 3 are the National Security Act of 1947, 50 U.S.C. § 3024(i)(1), and the Central Intelligence Agency Act of 1949, 50 U.S.C. § 3507. The former states that "[t]he Director of National Intelligence shall protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 3024(i)(1). The latter provides in relevant part that the CIA shall be exempt from disclosing "the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency." 50 U.S.C. § 3507. We have held that both statutes may be used to withhold information under Exemption 3. *DiBacco*, 795 F.3d at 183 (National Security Act); *Baker v. CIA*, 580 F.2d 664, 667 (D.C. Cir. 1978) (CIA Act).

To invoke Exemption 3, the government "need only show . . . that the withheld material falls within" a statute meeting the exemption's conditions. *Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009). "If an agency's statements supporting exemption contain reasonable specificity of detail as to demonstrate that the withheld information logically falls within the claimed exemption and evidence in the record does not suggest otherwise, . . . the court should not conduct a more detailed inquiry to test the agency's judgment and expertise or to evaluate whether the court agrees with the agency's opinions." *Id.* Indeed, "we have consistently deferred to executive affidavits predicting harm to national security, and have found it unwise to undertake searching judicial review." *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 927 (D.C. Cir. 2003). In this regard "Exemption 3 differs from other FOIA exemptions" because "its applicability depends less on the detailed factual contents of specific documents." *Morley v. CIA*, 508 F.3d 1108, 1126 (D.C. Cir. 2007) (quoting *Ass'n of Retired R.R. Workers v. U.S. R.R. Ret. Bd.*, 830 F.2d 331, 336 (D.C. Cir. 1987)).

DiBacco argues that the withholdings made under Exemption 3 by way of the CIA Act were unjustified for two reasons. She first contends that the CIA Act does not apply to these documents because they are not "personnel records." But the CIA Act does not cover only "personnel records." Rather, it protects from disclosure certain information relating to personnel, wherever that information may be found. *See* 50 U.S.C. § 3507. And here, the CIA submitted a declaration clearly stating that the redactions cover such information. *See* Appellees' Supplemental Appendix 19 (stating that the information withheld under Exemption 3 "includes: the names of CIA employees; information regarding CIA intelligence methods; information regarding covert CIA installations, including names and locations of these covert installations;

signatures of CIA employees; and internal CIA organizational information"). Nothing that DiBacco identifies in the documents or the remainder of the record gives us reason to doubt these representations. When viewed in the context of the redacted documents themselves, moreover, it is apparent that the information withheld under the CIA Act largely consists of names or nationalities. Taken together, the government has sufficiently justified its assertion that the redacted information is of the type protected by the CIA Act. *See Larson*, 565 F.3d at 864-65.

DiBacco next takes issue with the use of Exemption 3 and the CIA Act to shield from disclosure information about persons no longer "employed by the Agency." DiBacco Br. 41 (quoting 50 U.S.C. § 3507). Because of the age of the documents in question, it is highly unlikely that anyone referenced remains employed by the CIA. On DiBacco's reading of the CIA Act, that precludes using the statute to withhold information. The government, in contrast, urges us to interpret "personnel employed by the Agency" to include individuals who previously worked for the CIA. It relies primarily on a case involving Title VII of the Civil Rights Act of 1964 in which the Supreme Court held that the statute's use of the word "employed" without "any temporal qualifier . . . could just as easily be read to mean '*was* employed'" as to mean "*is* employed." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 342 (1997).

Given the similarity between the text of the statutes, we think it fair to say that the CIA Act's text does not expressly restrict its scope to personnel currently employed by the agency. The relevant provision contains no "temporal qualifier," and the plain text could just as easily be read to refer to past employment as to ongoing employment. DiBacco argues that we should adopt only the latter construction

because exemptions to the FOIA's general regime of disclosure are to be construed narrowly. *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011). But *Milner* does not govern because it construes the FOIA, not the CIA Act. And although the CIA Act itself represents only a "very narrow" exception to the FOIA's disclosure requirements, *Baker*, 580 F.2d at 670, we must nonetheless interpret the CIA Act to "give reasonable effect to the congressional intent" expressed in the text of the statute, *Halperin v. CIA*, 629 F.2d 144, 151 (D.C. Cir. 1980). That is, "to protect the security of foreign intelligence activities and to further the protection of intelligence sources and methods." *Halperin*, 629 F.2d at 151.

We have never expressly resolved whether "employed by" refers only to ongoing employment, but the Ninth Circuit dealt with this very question in *Minier v. CIA*, 88 F.3d 796 (9th Cir. 1996). The court concluded that "[u]se of the word 'employed' without qualification indicates that Congress intended the [CIA Act] to apply to both current and former agents." *Id.* at 802 n.9. That reading of the statue was informed by the CIA Act's generally expansive protections for agency records, which indicated Congress desired to privilege national security over the FOIA's general preference for disclosure. *Id.* at 801-02. This reasoning is in accord with *Robinson* and a prior decision of this court in which we approved of the CIA's use of Exemption 3 and the CIA Act to withhold information about temporary employees of the agency. *Halperin*, 629 F.2d at 151. Our opinion never discussed whether the temporary employees were still employed by the CIA, but our description of the employment relationship suggests that they were not. *Id.* We nevertheless held that these workers were "personnel employed by the Agency," because that broader reading was required to give effect to the purpose of the CIA Act. *Id.* Given the statutory text, the Supreme Court's decision in *Robinson*, the persuasive reasoning of the Ninth Circuit in *Minier*, and our

past approach to interpreting the relevant provision, we reject DiBacco's argument that the CIA Act only applies to information referencing current intelligence personnel.

DiBacco's final objection relates to the CIA's use of the National Security Act to withhold information that would reveal "intelligence sources and methods." 50 U.S.C. § 3024(i)(l). She argues that, given the CIA's past overuse of this exemption, we must express "considerable skepticism" at its claims here, because the agency may be attempting to "keep[] the American public from fully learning how badly the CIA was gulled" by former Nazis. DiBacco Br. 42; *see also* Reply Br. 17-19. This theory of bad faith is far too speculative to justify disregarding the declarations produced by the CIA that explain why Exemption 3 and the National Security Act warranted the challenged redactions. *Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 393 (D.C. Cir. 1987) (requiring "tangible evidence of bad faith" to doubt agency submissions); *see also Minier*, 88 F.3d at 803. Regardless of whether the CIA has in the past overreached in relying on the National Security Act—a proposition on which we take no position—DiBacco has offered no compelling reason to suspect bad faith here. The limited nature and context of the redactions make that conclusion all the more obvious by suggesting that the information redacted was precisely the sort of information the CIA says it was.

III

The government conducted an adequate search and properly justified its withholdings. We therefore affirm the district court's grant of summary judgment to the defendants.

*So ordered.*