# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued September 11, 2023　　　Decided September 3, 2024

No. 22-5153

AMARA EMUWA, ET AL.,
APPELLANTS

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:20-cv-01756)

———

　　*David L. Cleveland, Sr.* argued the cause and filed the briefs for appellants.

　　*Peter C. Pfaffenroth*, Assistant U.S. Attorney, argued the cause for appellee. On the brief were *Brian P. Hudak*, *Jane M. Lyons*, and *Derek S. Hammond*, Assistant U.S. Attorneys. *R. Craig Lawrence* entered an appearance.

　　Before: KATSAS, CHILDS, and PAN, *Circuit Judges*.

　　Opinion for the Court filed by *Circuit Judge* KATSAS.

KATSAS, *Circuit Judge*: Asylum officers of the United States Citizenship and Immigration Services (USCIS) interview applicants and make written recommendations about whether the agency should grant them asylum. We have held that the deliberative-process privilege protects these recommendations from disclosure. This appeal presents the question whether the foreseeable-harm provision of the Freedom of Information Act nonetheless requires disclosure. USCIS concluded that releasing the deliberative portions of the recommendations would foreseeably harm interests protected by the privilege. The district court upheld that determination, as do we.

I

A

FOIA requires federal agencies to make records publicly available upon request unless one of nine exemptions applies. *See* 5 U.S.C. § 552(a)(3)(A), (b). Exemption 5 protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." *Id.* § 552(b)(5). This exemption incorporates privileges available to agencies in civil litigation, including the deliberative-process privilege. *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 263 (2021). That privilege shields documents "reflecting advisory opinions, recommendations, and deliberations" that agencies use to make decisions. *Id.* at 267 (cleaned up). The privilege ensures that "debate and candid consideration of alternatives within an agency" are not subject to public inspection. *Machado Amadis v. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020) (cleaned up); *see also Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001)

(deliberative-process privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery").

In 2016, Congress amended FOIA to impose an additional requirement for agencies to withhold requested records. FOIA Improvement Act, Pub. L. No. 114–185 § 2, 130 Stat. 538, 539. Now, even if an exemption applies, the agency may withhold the record only if it "reasonably foresees that disclosure would harm an interest protected" by the exemption. 5 U.S.C. § 552(a)(8)(A)(i)(I). Thus, to withhold records covered by Exemption 5 through the deliberative-process privilege, an agency must show that releasing the specific records sought "'would' chill future internal discussions." *Machado Amadis*, 971 F.3d at 371.

B

The government may grant asylum to aliens who qualify as refugees. 8 U.S.C. § 1158(b)(1)(A). A refugee is someone who cannot return to his home country "because of persecution or a well-founded fear of persecution" on account of certain protected categories. *Id.* § 1101(a)(42).

USCIS, an agency within the Department of Homeland Security, adjudicates applications for asylum. USCIS asylum officers interview asylum applicants to determine their refugee status. 8 C.F.R. § 208.9. The asylum officer prepares a written assessment summarizing the interview, assessing the alien's credibility, and making a recommendation whether to grant or deny asylum. J.A. 252–53, 309–11. The document is called an Assessment to Grant or an Assessment to Refer, depending on whether the recommendation is to grant or deny asylum. Supervisors review these assessments in making the final agency decision. If USCIS denies asylum, it refers the alien's

case to Immigration and Customs Enforcement (ICE), another DHS component agency, for the commencement of removal proceedings.

In *Abtew v. DHS*, 808 F.3d 895 (D.C. Cir. 2015), this Court held that the deliberative-process privilege protects Assessments to Refer. *See id.* at 898–900. We concluded that the Assessment at issue was pre-decisional because it was "merely a recommendation to a supervisor" and deliberative because it was "written as part of the process by which the supervisor came to th[e] final decision." *Id.* at 899. More generally, we explained that a "recommendation to a supervisor on a matter pending before the supervisor is a classic example of a deliberative document." *Id.*

C

Four aliens who were denied asylum and an organization assisting them filed FOIA requests for copies of the aliens' Assessments to Refer and associated documents. USCIS released the factual portions of the Assessments but withheld portions containing analysis by the asylum officers. Specifically, it withheld "opinions, deliberations, and recommendation[s] regarding each applicant's eligibility for asylum," including analysis of the applicants' evidence and "reasons for crediting or discrediting the veracity of the applicants' statements." J.A. 310–11. The aliens and the organization sued to obtain the full Assessments.

Before the district court, a USCIS official submitted a declaration explaining the agency's basis for withholding. She explained that the disputed Assessments to Refer were "drafted by asylum officers in order to explain the basis for their recommendations" to supervisors and that the withheld portions of the Assessments "explained the officer's reasons

for recommending that asylum be denied, discussed legal justifications for a denial determination, and included other reasons to refer the case to ICE." J.A. 252–53.

The district court granted summary judgment to the government. Applying *Abtew*, it held that the deliberative-process privilege covers the requested Assessments. *Emuwa v. DHS*, No. 1:20-cv-1756, 2021 WL 2255305, at *4 (D.D.C. June 3, 2021). And applying *Machado Amadis*, it held that USCIS had adequately shown that releasing the withheld portions of the Assessments would foreseeably harm USCIS's interest in receiving candid recommendations from its asylum officers. *Id.* at *8–9.

After the plaintiffs appealed, this Court decided *Reporters Committee for Freedom of the Press v. FBI*, 3 F.4th 350 (D.C. Cir. 2021), which held that an agency had failed to show foreseeable harm from the release of certain documents protected by the deliberative-process privilege. *Id.* at 369–72. We then granted a consent motion to remand this case for further consideration. *Emuwa v. DHS*, No. 21-5131, 2021 WL 8875652 (D.C. Cir. Nov. 12, 2021).

On remand, USCIS submitted a supplemental declaration from Cynthia Munita, its Chief FOIA Officer, who elaborated on the agency's assessment of foreseeable harm. She explained that the "adjudication of asylum applications" is a "sensitive" matter implicating national interests and sometimes provoking public controversy. J.A. 309. She confirmed that USCIS officers who interviewed the aliens prepared the Assessments at issue to recommend further action to their supervisors. *Id.* at 310. Likewise, she confirmed that the withheld portions contained "candid impressions, opinions, and analyses of the evidence and … the bases" for the recommendations. *Id.* She

explained that releasing the "specific pre-decisional deliberations" at issue "would interfere with USCIS's ability to make sound judgments on asylum applications" because the line officers "would temper their discussions with the knowledge that their views and characterizations would be made public." *Id.* at 311; *see also id.* ("disclosure of this information would cause asylum officers to no longer feel free to discuss their evaluations of evidence or their analysis of the asylum eligibility criteria in an open and frank manner"). She stressed the importance to USCIS of "candid evaluation by asylum officers." *Id.* Finally, she elaborated that, in the specific context of asylum adjudications, "revealing the kinds of matters and information that the asylum officers considered … would allow bad actors to better fabricate evidence or testimony so that they might be granted asylum under false pretenses." *Id.* at 312. And that concern "would further stifle the free flow of information between asylum officers and their supervisors." *Id.*

The district court again granted summary judgment to DHS; it held that the agency had adequately justified the claim of foreseeable harm under the standards required by *Machado Amadis* and *Reporters Committee*. *Emuwa v. DHS*, No. 1:20-cv-1756, 2022 WL 1451430, *1–5 (D.D.C. May 9, 2022).

The plaintiffs appealed. We have jurisdiction under 28 U.S.C. § 1291.

II

The parties agree that the deliberative-process privilege applies to the four requested Assessments. The only contested question is whether DHS adequately showed that disclosure of their analysis portions, including cited source material, would foreseeably harm interests the privilege protects. In FOIA

cases, as in others, we review summary judgments *de novo*. *Machado Amadis*, 971 F.3d at 368.

A

In *Machado Amadis* and *Reporters Committee*, this Court explained how FOIA's foreseeable-harm requirement applies to records protected by the deliberative-process privilege. The requirement prevents an agency from withholding requested records unless it "reasonably foresees that disclosure would harm an interest protected by" the relevant exemption. 5 U.S.C. § 552(a)(8)(A)(i)(I). *Machado Amadis* explained that the agency therefore must consider the specific "information at issue" in the case. 971 F.3d at 371. And it must show that disclosure of the requested information "would" chill future internal agency deliberations, not simply that it "could" do so. *See id.* We held that the Department of Justice had adequately justified withholding the deliberative portions of its "Blitz Forms," which are recommendations from subordinate attorneys to superiors regarding the handling of pending FOIA requests. *Id.* at 370. In crediting the agency's prediction that full release of the Blitz Forms would chill candid advice, we stressed that "recommendations from subordinates to superiors lie at the core of the deliberative-process privilege." *Id.*

*Reporters Committee* likewise explained that "what is needed is a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward." 3 F.4th at 370. We explained it was not enough to simply assert "the generic rationale for the deliberative process privilege itself," without also explaining "why actual harm would foreseeably result from release of the specific type of material at issue." *Id.*

at 370–71.  We held that the FBI declarations failed to satisfy these requirements as a general matter, but we upheld withholding certain communications where the foreseeability of harm was "manifest" from the "very context and purpose" of the communications.  *Id.* at 371–72.

Measured against these benchmarks, Munita's supplemental declaration adequately demonstrates foreseeable harm.  As explained above, she confirmed that the withheld material consisted of recommendations from subordinates to supervisors on whether to grant pending asylum applications, J.A. 309–10, which are a "classic example" of material protected by the deliberative-process privilege, *Abtew*, 808 F.3d at 899.  Her analysis focused on why release of the "withheld portions of the four assessments at issue" (not privileged information in general) "would" (not could) "interfere with USCIS's ability" to receive candid advice from its line asylum officers.  J.A. 310–11; *see Machado Amadis*, 971 F.3d at 371.  And she laid out contextual considerations tending to support the reasonableness of that judgment, including the "sensitive" nature of asylum adjudications and the specific concern about facilitating asylum fraud.  J.A. 309, 312; *see Reps. Comm.*, 3 F.4th at 372.  The affidavit thus showed "a link between the specified harm"—reduced candor by line asylum officers making recommendations to superiors—"and the specific information" withheld—the officials' analyses of applicants' interviews.  *Reps. Comm.*, 3 F.4th at 371 (cleaned up).  And this "chilling of candid advice" is the precise harm that the deliberative-process privilege seeks to prevent.  *Machado Amadis*, 971 F.3d at 371.

9

B

The plaintiffs' counterarguments, focused on the quality of the Munita declaration and on USCIS's release of allegedly similar materials, are unpersuasive.

1

The plaintiffs raise a host of challenges to the thoroughness and credibility of the Munita declaration. To begin, they contend that the declaration was not based on "personal knowledge," as required by Federal Rule of Civil Procedure 56(c)(4). But Munita averred that the statements in her declaration were "based on my personal knowledge, my review of the relevant documents kept by USCIS in the course of ordinary business, and upon information provided to me by other USCIS employees in the course of my official duties." J.A. 309. On its face, the declaration confirms that Munita reviewed the four Assessments at issue. Moreover, we have held that government officers, in submitting declarations under Rule 56(c)(4), may rely on information obtained from subordinates in the course of performing their official duties. *See*, *e.g.*, *DiBacco v. Dep't of the Army*, 926 F.3d 827, 833 (D.C. Cir. 2019); *Cont'l Cas. Co. v. Am. Sec. Corp.*, 443 F.2d 649, 651 (D.C. Cir. 1970) (per curiam).

The plaintiffs object that we sometimes have demanded further detail on how the declarant learned the relevant information. But their cases turned on specific concerns about the seeming lack of connection between the information and the declarant's ordinary official duties. *See*, *e.g.*, *Londrigan v. FBI*, 670 F.2d 1164, 1168, 1174–75 (D.C. Cir. 1981) (thoughts of people interviewed by other FBI agents twenty years prior); *Campbell v. DOJ*, 164 F.3d 20, 35 (D.C. Cir. 1998) ("events that occurred more than 30 years ago"); *Shaw v. FBI*, 749 F.2d

58, 63 n.2 (D.C. Cir. 1984) (affiant "did not claim any personal participation in the investigation" at issue). This case presents no such concerns: Munita has worked at USCIS since 2008, has served as a line "Immigration Services Officer," and now is the agency's Chief FOIA Officer. J.A. 308. We have no reason to doubt her qualifications or knowledge to provide the supplemental declaration.

The plaintiffs object that Munita did not discuss the age, content, and character of the Assessments at issue. But as explained above, she plainly considered their content and character in making her foreseeable-harm assessment. As for the age of requested documents, we held in *National Security Archive v. CIA*, 752 F.3d 460 (D.C. Cir. 2014), that the deliberative-process privilege does not vanish with the passage of time. *Id.* at 464. Congress responded by inserting into FOIA a 25-year limit for withholding documents based on the deliberative-process privilege. FOIA Improvement Act § 2, 130 Stat. at 540 (codified at 5 U.S.C. § 552(b)(5)). But here, the disputed Assessments were all created less than eight years ago. We can thus discern no reason why Munita, in addressing the documents at issue, had to specifically discuss their age.

The plaintiffs object that Munita failed to address each of the four Assessments individually. But in *Reporters Committee*, we held that agencies may show foreseeable harm "on a category-by-category basis rather than a document-by-document basis," so long as each category contains "like records" and the threat of harm is "independently demonstrated for each category." 3 F.4th at 369. Here the declaration made clear that there were no material differences among the four disputed Assessments, which summarized asylum interviews, assessed the applicants' credibility and evidence, and made recommendations to superiors. J.A. 309–11. Having

established a relevant category of like documents, Munita had no obligation to address each document individually.

The plaintiffs object that Munita failed to conduct a line-by-line review of the withheld materials to determine whether any portion of them could be safely released. But she confirmed that her office "review[ed]" the redactions to "consider[] whether any information could be segregated and released without causing a foreseeable harm to the agency." J.A. 312. And she explained the agency's view that "no further segregation" was possible without disclosing such information. *Id.* at 312–13. USCIS thus did conduct the segregability analysis required for assessing foreseeable harm. *See* 5 U.S.C. § 552(a)(8)(A)(ii); *Leopold v. DOJ*, 94 F.4th 33, 37–38 (D.C. Cir. 2024). The plaintiffs further assert that the Assessments' discussion of source materials could be safely segregated and released. But discussion of source material was part-and-parcel of the "analysis, opinions, deliberations, and recommendations" contained in the Assessments and addressed in the declaration. J.A. 310–11. And revealing how asylum officers assessed those sources would facilitate asylum fraud. *Id.* at 312. Even the plaintiffs' complaint acknowledges that "[i]f applicants know what sources are good, they can tailor their own research accordingly." *Id.* at 21. In short, releasing the sources underlying the analysis would cause a similar harm to the deliberative process as releasing the analysis itself.

Finally, the plaintiffs highlight what they characterize as significant errors in the declaration. First, they point to Munita's statement that asylum officers expect Assessments to be reviewed "only by those within USCIS," J.A. 310, even though they are sometimes shared with other government officials. But far from suggesting wide dissemination, the

evidence indicates restricted access by other immigration or law-enforcement agencies for specific operational needs. *Id.* at 228–30. That does not materially undermine the agency's concern that making Assessments publicly available upon request would foreseeably chill agency deliberations. Second, the plaintiffs highlight a statement in the declaration that Assessments contain the "internal deliberations" of a supervisory asylum officer as well as the line, interviewing officer. *Id.* at 312. This minor error, on an issue that is irrelevant to the concern about chilling the candor of the line officers, does not undermine the overall credibility of the declaration. *See SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1202 (D.C. Cir. 1991) (looking past immaterial errors in agency declaration).

2

The plaintiffs raise further arguments based on the release of other, assertedly similar immigration documents, as well as the occasional release of Assessments to Refer. They contend that these various releases undercut USCIS's assessment of foreseeable harm in this case.

First, the plaintiffs point to the routine release of three different kinds of asylum documents—notices of intent to deny, notices of intent to terminate, and records of determination. But USCIS prepares these documents for release to the affected alien: A notice of intent to deny informs an asylum applicant lawfully present in the United States that USCIS intends to deny the application and offers him the opportunity to submit additional information. 8 C.F.R. § 103.2(b)(8)(iii)–(iv). A notice of intent to terminate performs a similar function for individuals previously granted asylum but found no longer eligible for it. *Id.* § 208.24(c). And a

record of determination informs an unlawfully present alien of an asylum officer's determination as to whether the alien has shown a credible fear of persecution and may progress to further asylum proceedings. *Id.* § 208.30(g)(1). The release of these final notices does not undermine the need to protect the confidentiality of *pre-decisional* documents written for consumption *within the agency* itself. The plaintiffs object that these three kinds of immigration documents publicly convey grounds for adverse asylum decisions, as do Assessments to Refer. Again, though, the need to publicly justify a final agency decision does not undercut the importance of protecting internal deliberations about those same decisions before they are made. *See*, *e.g.*, *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151–52 (1975).

For similar reasons, the plaintiffs get no mileage from USCIS's release, in a subset of removal proceedings, of various record documents and written decisions denying asylum. The plaintiffs note that aliens placed in certain removal proceedings are entitled to receive the "record of proceedings" from the asylum interview, which includes the decision denying asylum, the asylum application, all supporting information provided by the applicant, comments provided to USCIS by other agencies, and "any other unclassified information considered by the asylum officer." 8 C.F.R. §§ 208.9(f), 1240.17(a), (c). But the "record of proceedings" does not include internal recommendations to the decisionmaker: "[P]redecisional and deliberative documents are not part of the administrative record to begin with," just as a law clerk's bench memorandum would not be part of the record on which a judicial decision is based. *Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019) (cleaned up).

Finally, the plaintiffs point to the past release of Assessments to Refer. But "an agency does not forfeit a FOIA exemption simply by releasing similar documents in other contexts." *Abtew*, 808 F.3d at 900. The plaintiffs allege that the Immigration and Naturalization Service, USCIS's predecessor agency, regularly released Assessments requested under FOIA between 1998 and 2002, and that USCIS did so from 2003 to 2005. But the record contains fewer than ten such releases. Moreover, an alleged practice started by a different agency and discontinued some two decades ago says little about the sensitivity of—and concomitant need to protect deliberations about—asylum adjudications today. In the past two decades, the plaintiffs cite only two instances when USCIS released Assessments to Refer—one to moot out a potentially difficult FOIA case in 2020, J.A. 350–55, and one to impeach the credibility of an alien's testimony in a removal proceeding, *id.* at 362–68. Those instances simply show that the government is sometimes willing to suffer the consequences of releasing Assessments in order to achieve some competing institutional objective. That hardly suggests that the routine release of Assessments through FOIA would not foreseeably chill internal agency deliberations.

III

For these reasons, we affirm the summary judgment for DHS.

*So ordered.*