# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued February 4, 2025        Decided July 22, 2025
Reissued July 31, 2025

No. 24-5119

SETH HETTENA,
APPELLANT

v.

CENTRAL INTELLIGENCE AGENCY,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:22-cv-00877)

*Stephen Stich Match* argued the cause for appellant. With him on the briefs was *Matthew Topic*.

*Kevin B. Soter*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, at the time the brief was filed, and *Sharon Swingle*, Attorney.

Before: PILLARD and GARCIA, *Circuit Judges*, and ROGERS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GARCIA.

GARCIA, *Circuit Judge*:    Seth Hettena submitted a Freedom of Information Act request to the CIA for a report about an Iraqi national who died in CIA custody at the Abu Ghraib prison.   The CIA disclosed parts of the report but redacted most of it.   This appeal concerns whether the CIA's redactions comply with FOIA.   The district court held that they do.   Because the record does not adequately support that conclusion, we vacate and remand.

## I

In 2003, the United States captured Manadel al-Jamaidi—an Iraqi national suspected of carrying out a terrorist attack in Baghdad—and moved him to the Abu Ghraib prison in Iraq. Hours later, al-Jamaidi died while being interrogated by CIA officers.  A medical examiner ruled his death a homicide.

The CIA's Office of Inspector General (OIG) investigated al-Jamaidi's death, including "allegations of impropriety" on the part of CIA officers.   J.A. 166.   In 2005, the OIG finalized—but did not publicly release—a report describing its findings.[1]

In 2021, Hettena, an investigative journalist, asked the CIA to disclose the report under FOIA.   FOIA generally requires federal agencies to disclose government records upon request.  *See* 5 U.S.C. § 552(a), (b).   After the CIA did not timely respond, Hettena sued.

The lawsuit prompted the CIA to release parts of the report, including a general summary of the events surrounding

---

[1] In the years since al-Jamaidi's death, the CIA has disclosed several materials related to his capture and interrogation, including the results of the medical examiner's autopsy and several investigative reports summarizing interviews with anonymous CIA witnesses. But by 2021, it had not disclosed the report.

3

al-Jamaidi's death. The report states that a "hood" was "placed over" al-Jamaidi's head and neck during the interrogation. J.A. 384. The report elsewhere refers to a "head cover.' J.A. 403; J.A. 405. The disclosures also contained a list of federal criminal laws that "could apply to the actions of CIA officers" under investigation. J.A. 413. Most of those laws make it a crime to defraud the federal government or obstruct a federal investigation. *See* J.A. 413–14 (citing 18 U.S.C. §§ 371, 1001, 1519).

onetheless, the bulk of the report—including the OIG's conclusions and recommendations—remained redacted. This case requires us to decide whether those redactions comply with FOIA.

In responding to a FOIA request, an agency may withhold information that falls into any of the statute's enumerated exemptions. *See* 5 U.S.C. § 552(b). The agency cannot, however, withhold an entire record simply because it contains some exempt information. *See Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). FOIA requires agencies to "take reasonable steps necessary to segregate and release nonexempt information." 5 U.S.C. § 552(a)(8)(A)(ii)(II). So if an agency can disclose additional "information content" without "indirectly reveal[ing]" any protected material, it must do so. *Mead Data*, 566 F.2d at 261 & n.55. The agency, moreover, waives the right to withhold any material that it has already "officially acknowledged" through a prior disclosure. *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990) (citation modified). Through it all, the agency bears the burden of proving that it has disclosed all it must under FOIA. 5 U.S.C. § 552(a)(4)(B).

The CIA claims that the redactions satisfy FOIA because most of the redacted material pertains to the Agency's "intelligence activities," "sources," and "methods." That sort

of information, the Agency argues, is covered by FOIA Exemptions 1 and 3.[2] The CIA also insists that it cannot disclose any additional "information content" from the report without also revealing that protected material. To support these assertions, the CIA has submitted a one-page *Vaughn* index and a declaration from a FOIA officer.[3]

Hettena does not dispute that the CIA may withhold information about the Agency's "intelligence activities," "sources," or "methods." *See, e.g.*, Appellant's Brief 9. Instead, he claims that the redactions must include material that falls outside those protected categories of information— specifically, statements relating to the OIG's investigation into potential obstruction by CIA officers. And at least some of the redactions, he speculates, cover information that the CIA has

[2] Exemption 1 covers any information that is "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy" and is "in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). The CIA has relied on Executive Order 13,526, which covers (as relevant here) material pertaining to "intelligence activities (including covert action)," "intelligence sources or methods," and "foreign relations or foreign activities of the United States." Classified National Security Information, Exec. Order No. 13,526 § 1.4(c), (d), 75 Fed. Reg. 707, 709 (Dec. 29, 2009). Exemption 3 applies to "matters" that are "specifically exempted from disclosure" by a qualifying "statute." 5 U.S.C. § 552(b)(3). For this exemption, the CIA has pointed to the National Security Act, which likewise protects "intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 3024(i)(1); *see Leopold v. CIA*, 987 F.3d 163, 167 (D.C. Cir. 2021).

[3] The *Vaughn* index describes the report and explains the CIA's redactions. *See Vaughn v. Rosen*, 484 F.2d 820, 826–27 (D.C. Cir. 1973). The declaration elaborates on the Agency's reasoning.

already "officially acknowledged" in a prior disclosure, including statements about a "hood" or "head cover."

After reviewing the CIA's evidence and the full report in camera, the district court granted summary judgment in the government's favor. *See Hettena v. CIA*, 2024 WL 1239705, at *1 (D.D.C. Mar. 22, 2024).[4]

## II

We review the district court's decision de novo. *Connell v. CIA*, 110 F.4th 256, 263 (D.C. Cir. 2024). At the parties' invitation, we have also reviewed the full report in camera. *See* 5 U.S.C. § 552(a)(4)(B). We also conducted a classified, ex parte hearing with the CIA's representatives.

We conclude—and Hettena does not doubt—that most of the redactions comply with FOIA. As the CIA's declaration describes, much of the report contains information about CIA "covert personnel," "methods for collecting foreign intelligence," "locations of Agency facilities," and the like. J.A. 34–39. And as the declaration explains, disclosing this sort of material would clearly reveal something new about the CIA's intelligence activities, sources, and methods. *Id.*; *see also Hettena*, 2024 WL 1239705, at *4. Disclosing the identities of covert personnel, for example, could "expose the intelligence activities with which they have been involved and the sources with whom they have had contact." J.A. 35. In

---

[4] Before the district court, we note, the CIA also relied on other, alternative grounds to justify the redactions. The district court did not address these arguments. *See Hettena v. CIA*, 2024 WL 1239705, at *3 (D.D.C. Mar. 22, 2024). So, for our purposes, the only ground at issue here is the CIA's assertion that the redactions are necessary to protect information about the Agency's "intelligence activities," "sources," and "methods."

offering these explanations, the CIA has adequately justified most of its redactions.

But the CIA has not adequately justified every redaction. The redactions also include the OIG's findings about whether any CIA officers obstructed its internal investigation. We cannot tell from the record, however, why those findings have been withheld. As the CIA itself concedes, a "standalone finding by the Inspector General regarding destruction of evidence" would not "necessarily contain classified information regarding intelligence activities or methods." Appellee's Brief 21; *see also* Tr. of Oral Arg. 19–21. Disclosing whether obstruction occurred would not necessarily reveal, for instance, any of the categories of information discussed in the CIA's declaration (such as "covert personnel," "methods for collecting foreign intelligence," and so on). And to the extent any obstruction-related findings refer to specific pieces of classified evidence, the CIA could presumably disclose the OIG's high-level conclusions about whether obstruction occurred without divulging any of the details (such as which specific individuals or pieces of evidence were involved). For the CIA to adequately justify its redactions, it would need to grapple with these basic points.

The CIA has not done that. It insists that, even if findings about obstruction are not always exempt, the specific findings in this report are. But we see nothing in the record to support that assertion. Neither the declaration nor the *Vaughn* index, as we've noted, addresses findings related to obstruction. And, based on our review, there are obstruction-related findings that can seemingly be separated from the remainder of the report in a way that produces meaningful "information content." *Mead Data*, 566 F.2d at 261 n.55. As a result, we are left to wonder how the disclosure of those findings would, directly or indirectly, reveal anything new about the CIA's intelligence activities, sources, or methods. Without more from the

Agency, we see no basis in the record to conclude that such statements are protected under FOIA. *Cf. Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007) (requiring that agency affidavits in the FOIA context justify any withholdings in "reasonably specific detail" and that any justification "appears logical or plausible" (citation modified)).

Likewise, factual questions remain over Hettena's challenge that the redactions contain information that the CIA has already "officially acknowledged." For the most part, we agree with the CIA that it has not publicly acknowledged any of the statements it has redacted. But one issue—whether the report's now-public references to a "hood" or "head cover" require further disclosures—poses a trickier question. On one level, we agree with the CIA: By revealing the existence of a "hood" or "head cover," the CIA did not make every statement about a "hood" or "head cover" subject to disclosure under this court's official-acknowledgment doctrine. *See Fitzgibbon*, 911 F.2d at 765 (applying the doctrine only when "the information requested" is "as specific as the information previously released"). At the same time, we cannot tell whether every redacted statement about a "hood" or "head cover" reveals something new about the CIA's intelligence activities, sources, or methods. Nothing in the CIA's evidence, again, speaks to this specific issue. So, as things stand, we cannot conclude that the redactions fully comply with FOIA's "official acknowledgment" doctrine.

Finally, a word about what happens next. We think it best to give the CIA another chance to explain itself on remand, especially in view of the national-security interests at stake. *See* 28 U.S.C. § 2106. The district court may therefore further develop the record to resolve the factual issues we have identified, perhaps with the benefit of an ex parte declaration

from the CIA. *Cf. Arieff v. Dep't of Navy*, 712 F.2d 1462, 1470–71 (D.C. Cir. 1983).[5]

We appreciate that our analysis has been more abstract than concrete. That is the reality of a case dealing with sensitive materials in the national-security setting. To fill in some of the details, with an eye toward guiding potential review on remand, we have prepared a classified, ex parte addendum identifying a representative (but not exhaustive) set of redactions that the CIA has failed to adequately justify. To be clear, we do not definitively hold that any of those statements must be disclosed. We hold only that the statements raise difficult questions that the CIA has not adequately answered on this record.

The district court, of course, could also seek to resolve this case based on any of the other grounds invoked by the CIA. For example, the CIA has also raised a separate and slightly different Exemption 3 argument, based on the CIA Act. *See DiBacco v. Dep't of Army*, 926 F.3d 827, 835 (D.C. Cir. 2019). It also claims that certain portions of the report are covered by Exemption 5. The district court did not reach these alternative arguments, and neither do we. *See Liff v. Off. of Inspector Gen. for Dep't of Lab.*, 881 F.3d 912, 919 (D.C. Cir. 2018) (restating the "general rule" that "a federal appellate court does not consider an issue not passed upon below" (citation modified)).

### III

We vacate the district court's judgment and remand for further proceedings consistent with this opinion.

*So ordered.*

---

[5] Hettena's own reply brief, we note, likewise suggests that we order the CIA to provide further "clarification on remand" if necessary. Reply Brief 8 n.2.